SETTLEMENT AGREEMENT

This Settlement Agreement ("Agreement") is entered into among the United States of America ("United States"), acting through the United States Department of Justice and on behalf of the Office of Inspector General ("OIG-HHS") of the Department of Health and Human Services ("HHS") and the North Carolina Office of the Attorney General (collectively the "Government"); John Sunghoon Won, D.D.S., M.D.; John S. Won, D.D.S., M.D., P.A, d/b/a Preston Oral and Maxillofacial Surgery, a North Carolina corporation (collectively "Won"). Each of the above hereafter collectively referred to as "the Parties" through their authorized representatives.

RECITALS

A.      Won provides dental and oral surgical services to clients within the Eastern District of North Carolina.

B.      Virginia Hamilton and Laura Thomas ("Relators") have filed the following respective *qui tam* action in the United States District Court as follows:

United States ex rel. v Dr. John Sunghoon Won & Jon S. Won, D.D.S., M.D., P.A. D/B/A Preston Oral and Maxillofacial Surgery, et al., Case No. 5:14-CV-124 BO.

The above named individual relators are herein collectively referred to as "Relators."

1

GOVERNMENT
EXHIBIT

A

C.    This *qui tam* action identified in Paragraph (B) will be referred to as the "Civil Action."

D.    The Government contends that during the dates of January 1, 2008, through December 31, 2011, Won submitted or caused to be submitted claims for payment to the North Carolina Medicaid Program (Medicaid), Title XIX of the Social Security Act, 42 U.S.C. §§ 1396-1396v, in violation of the North Carolina False Claims Act, N.C.G.S. §§ 1-605, *et seq.,* and the Medical Assistance Provider Claims Act, N.C.G.S. §§ 108A-70.10, *et seq.*; and

E.    The Government contends that it has certain civil claims against Won arising from the following conduct, during the dates of January 1, 2008 through December 31, 2011:

(1)    Won's submission of claims to the North Carolina Medicaid Program for Detailed and Extensive Oral Evaluations (CDT D0160) for patients who, the Government contends, generally already had a preliminary diagnosis at the time of the referral for third molar extraction(s), did not require nor did the patients receive a detailed examination and/or any diagnostic testing, and the patient's dental chart did not support billing a detailed evaluation;

(2)    Won's submission of claims to the North Carolina Medicaid Program for Deep Sedation/general anesthesia – each additional 15 minutes (CDT 9221), which the Government contends, were not medically necessary and which were performed in violation of Division of Medical Assistance Clinical Coverage Policy;

2

(3)     Won's submission of claims to the North Carolina Medicaid Program for

Inhalation of nitrous oxide/anxiolysis, analgesia (CDT D9230), which the Government

contends were billed in violation of Division of Medical Assistance Clinical Coverage

Policy;

(4)     Won's submission of claims to the North Carolina Medicaid Program for

Alveoloplasty in conjunction with extractions – four or more tooth spaces, per quadrant

(CDT D7310) and Alveoloplasty in conjunction with extractions – one to three teeth or

tooth spaces, per quadrant (CDT D7311), which the Government contends, were not

medical necessary and which were performed in violation of Division of Medical

Assistance Clinical Coverage Policy.

This conduct, as recited above in Paragraph E, is referred to below and throughout this

Settlement Agreement as the "Covered Conduct."

F.     This Settlement Agreement is neither an admission of liability by Won nor a

concession by the Government that its claims are not well founded.    Settlement is for the

resolution of disputed claims.

G.     To avoid the delay, uncertainty, inconvenience, and expense of protracted

litigation of the above claims, and in consideration of the mutual promises and obligations of this

Settlement Agreement, the Parties agree and covenant as follows:

TERMS AND CONDITIONS

1.     Won shall pay to the Government the aggregate principal amount of two million

two hundred thousand dollars ($2,200,000.00) (the "Settlement Amount") by electronic funds

3

(wire) transfer pursuant to written instructions to be provided by the Office of the United States Attorney for the Eastern District of North Carolina. No later than 30 days following the Effective Date of this Agreement, Won shall pay $900,000.00 via wire transfer to be credited by the Government towards the Settlement Amount. Said monies to be included in the initial payment are any and all monies currently remaining in the "withhold" account linked to any and all claims submitted by John S. Won, D.D.S., M.D. under NPI number 1003836321 or Legacy Provider No. 5901093 pursuant to 10A NCAC 22F .0604 and 42 CFR 455.23. As of April 1, 2015, the total amount of money contained within the "withhold" account is $644,360.52. The remaining principal balance of $1,300,000.00 shall be paid by Won, due by 5:00 pm U.S. Eastern time on the following dates: (a) no later than March 31, 2016, Won shall pay $300,000.00 plus interest via wire transfer to be credited by the Government toward the Settlement Amount; (b) to provide security as to the $300,000.00 payment, Won shall sign a Consent Judgment (Pursuant to Fed. Rules Civil Procedure 68) for the amount of $300,000.00 plus interest which may be docketed upon his failure to timely pay the agreed upon payment amounts is reflected herein and his failure to cure such non-payment within 30 days; (c) no later than December 1, 2015, Won shall commence periodic payments of $50,000.00 plus interest via wire transfer to be credited by the Government toward the Settlement Amount pursuant to the schedule attached as Exhibit A hereto; (d) Thereafter, Won shall make payment of $50,000.00 plus interest every ninety (90) days for a period of time no more than five years or until all remaining outstanding settlement monies are paid in full, transfer to be credited by the Government toward the Settlement Amount (or if on a weekend or holiday, the next United States business day) (each such day, a "Payment Date") pursuant to the schedule referenced

4

above until the remaining Settlement Amount is paid in full, (unless the number of payments, final payment date or final payment amount is reduced or the final payment date accelerated by the provisions of this Paragraph 1). Interest payable to the Government shall accrue at an annual rate of 2.75%, and on each Payment Date all interest, computed as 90 days (or, if the first payment, since the Effective Date)/365 (or, 366 during a calendar "leap" year) times 1,300,000.00 times .0275, shall be deemed immediately due and payable. Prepayment of any portion of the Settlement Amount is allowed. Interest, as computed by the provisions of Paragraph 1, shall also be due and payable on the date of any pre-payment. Upon any default by Won of the terms contained in Paragraph 1. or any other terms of this Agreement, the Government shall have the unconditioned right to accelerate payment and require that the full Settlement Amount then-outstanding be immediately due and payable.

2. Contingent upon the receipt of the respective settlement proceeds set forth above, the government agrees to pay the Relator(s) the following share, 20% of the total settlement amount received from the defendant, plus applicable interest. This share will be paid by the United States as money is received from the defendant.

3. Subject to the exceptions in Paragraph 7 (concerning excluded claims), and conditioned upon Won's full payment of the Settlement Amount, the United States releases Dr. John Sunghoon Won, John S. Won, D.D.S., M.D., P.A., d/b/a Preston Oral and Maxillofacial Surgery from any civil or administrative monetary claim the United States has for the Covered Conduct that is described above under the False Claims Act, 31 U.S.C. §§ 3729-3733; the Civil Monetary Penalties Law, 42 U.S.C. § 1320a-7a; the Program Fraud Civil Remedies Act, 31

5

U.S.C. §§ 3801-3812; or the common law theories of payment by mistake, unjust enrichment, and fraud.

Subject to the exceptions in Paragraph 7 (concerning excluded claims) below, and conditioned upon Won's full payment of the Settlement Amount, the State of North Carolina releases John S. Won, D.D.S., M.D., John S. Won, D.D.S., M.D., P.A., d/b/a/ Preston Oral and Maxillofacial Surgery from the North Carolina Medical Assistance Provider Fraud Claims Act, N.C.G.S. '108A-70.10, et seq.; the North Carolina False Claims Act, N.C.G.S. § 1-605, et seq.; or the common law theories of payment by mistake, unjust enrichment, and fraud.

4.      In consideration of the obligations of Won in this Agreement and the Integrity Agreement (IA), entered into between OIG-HHS and John Sunghoon Won, D.D.S., M.D., John S. Won, D.D.S., M.D., P.A., d/b/a Preston Oral and Maxillofacial Surgery, and conditioned upon Won's full payment of the Settlement Amount, the OIG-HHS agrees to release and refrain from instituting, directing, or maintaining any administrative action seeking exclusion from Medicare, Medicaid, and other Federal health care programs (as defined in 42 U.S.C. § 1320a-7b(f)) against Won under 42 U.S.C. § 1320a-7a (Civil Monetary Penalties Law) or 42 U.S.C. § 1320a-7(b)(7) (permissive exclusion for fraud, kickbacks, and other prohibited activities) for the Covered Conduct, except as reserved in Paragraph 7 (concerning excluded claims), below, and as reserved in this Paragraph. The OIG-HHS expressly reserves all rights to comply with any statutory obligations to exclude Won from Medicare, Medicaid, and other Federal health care programs under 42 U.S.C. § 1320a-7(a) (mandatory exclusion) based upon the Covered Conduct,

6

Nothing in this Paragraph precludes the OIG-HHS from taking action against entities or persons, or for conduct and practices, for which claims have been reserved in Paragraph 7, below.

5.   Default.   In the event that Won, either personally or through Preston Oral and Maxillofacial Surgery, fails to pay any amount as provided in Paragraph 1, above, within five (5) business days of the date upon which such payment is due, Won shall be in Default of its payment obligations ("Default").   The United States will provide written notice of the Default, and Won shall have an opportunity to cure such Default within five (5) business days from the date of the receipt of the notice.   Notice of Default will be delivered to Won, or to such representative as Won shall designate in advance in writing.   If Won fails to cure the Default within five (5) business days of receiving the Notice of Default, the remaining unpaid balance of the Settlement Amount shall become immediately due and payable, and interest shall accrue at the rate of 12% per annum compounded daily from the date of Default on the remaining unpaid total (principal, balance and interest due).   Won hereby consents to a Consent Judgment, in the event of such Default in the amount of the unpaid balance, and the United States, at its sole option, may: (a) offset the remaining unpaid balance from any amounts due and owing to Won by any department, agency, or agent of the United States at the time of the Default; or (b) exercise any other rights granted by law or in equity, including the option of referring such matters for private collection.   Won agrees not to contest any offset imposed and not to contest any collection action undertaken by the United States pursuant to this Paragraph, either administratively or in any state or federal court.   Won shall pay the United States all reasonable costs of collection and enforcement under this Paragraph, including attorney's fees and expenses.

6.   Notwithstanding the foregoing, in the event of Default as defined in Paragraph 5, above, OIG-HHS may exclude Won from participating in all Federal health care programs until

7

Won pays the Settlement Amount and reasonable costs as set forth in Paragraph 5, above. OIG-HHS will provide written notice of any such exclusion to Won. Won waives any further notice of the exclusion under 42 U.S.C. § 1320a-7(b)(7). Reinstatement to program participation is not automatic. If at the end of the period of exclusion Won wishes to apply for reinstatement, Won must submit a written request for reinstatement to OIG-HHS in accordance with the provisions of 42 C.F.R. §§ 1001.3001-.3005. Won will not be reinstated unless and until OIG-HHS approves such request for reinstatement.

7. Notwithstanding the releases given in paragraph 3 and 4 of this Agreement, or any other term of this Agreement, the following claims of the Government are specifically reserved and are not released:

    a.    Any liability arising under Title 26, U.S. Code (Internal Revenue Code);

    b.    Any criminal liability;

    c.    Except as explicitly stated in this Agreement, any administrative liability, including mandatory exclusion from Federal health care programs;

    d.    Any liability to the United States (or its agencies) for any conduct other than the Covered Conduct; or

    e.    Any liability based upon obligations created by this Agreement;

8

8.     Won has provided sworn financial disclosure statements ("Financial Statements")

to the Government and the Government has relied on the accuracy and completeness of those

Financial Statements in reaching this Agreement. Won warrants that the Financial Statements

were complete and accurate at the time they were provided to the Government. If the

Government learns of asset(s) in which Won had an interest at the time the Financial Statements

were provided to the Government that were not disclosed in the Financial Statements, or if the

Government learns of any misrepresentation by Won on, or in connection with, the Financial

Statements, and if such nondisclosure or misrepresentation changes the estimated net worth set

forth in the Financial Statements by $50,000 or more, the Government may at its option: (a)

rescind this Agreement and file suit based on the Covered Conduct, or (b) let the Agreement

stand and collect the full Settlement Amount plus one hundred percent (100%) of the value of the

net worth of Won previously undisclosed. Won agrees not to contest any collection action

undertaken by the Government pursuant to this provision, and immediately to pay the

Government all reasonable costs incurred in such an action, including attorney's fees and

expenses.

9.     In the event that the Government, pursuant to Paragraph 8 (concerning disclosure

of assets) above, opts to rescind this Agreement, Won agrees not to plead, argue, or otherwise

raise any defenses under the theories of statute of limitations, laches, estoppel, or similar

theories, to any civil or administrative claims that (a) are filed by the Government within 60

calendar days of written notification to Won that this Agreement has been rescinded, and (b)

relate to the Covered Conduct, except to the extent these defenses were available on the date of

execution of this Agreement.

9

10.     Won waives and shall not assert any defenses Won may have to any criminal prosecution or administrative action relating to the Covered Conduct that are specifically limited to a contention that, under the Double Jeopardy Clause in the Fifth Amendment of the Constitution, or under the Excessive Fines Clause in the Eighth Amendment of the Constitution, this Agreement bars a remedy sought in such criminal prosecution or administrative action. Nothing in this paragraph or any other provision of this Agreement constitutes an agreement by the Government concerning the characterization of the Settlement Amount for purposes of the Internal Revenue laws, Title 26 of the United States Code.

11      Won fully and finally releases the United States, its agencies, officers, agents, employees, and servants, from any claims (including attorney's fees, costs, and expenses of every kind and however denominated) that Won has asserted, could have asserted, or may assert in the future against the United States, and its agencies, employees, servants, and agents, related to the Covered Conduct and the United States' investigation and prosecution thereof.

12.     The Settlement Amount shall not be decreased as a result of the denial of claims for payment now being withheld from payment by any Medicaid carrier or intermediary or any state payor, related to the Covered Conduct; and Won agrees not to resubmit to any Medicaid carrier or intermediary or any state payor any previously denied claims related to the Covered Conduct, and agrees not to appeal any such denials of claims.

13.     Won agrees to the following:

a.      Unallowable Costs Defined: All costs (as defined in the Federal Acquisition Regulation, 48 C.F.R. § 31.205-47; and in Titles XVIII and XIX of the Social Security Act, 42 U.S.C. §§ 1395-1395kkk-1 and 1396-1396w-5; and

10

the regulations and official program directives promulgated thereunder) incurred by or on behalf of Won its present or former officers, directors, employees, shareholders, and agents in connection with:

(1)     the matters covered by this Agreement;

(2)     the Government's audit(s) and civil investigation(s) of the matters covered by this Agreement;

(3)     Won's investigation, defense, and corrective actions undertaken in response to the Government's audit(s) and civil investigation(s) in connection with the matters covered by this Agreement (including attorney's fees);

(4)     the negotiation and performance of this Agreement;

(5)     the payment Won makes to the Government pursuant to this Agreement, including any costs and attorney's fees; and

(6)     the negotiation of, and obligations undertaken pursuant to the IA to:

(i)     Retain an independent review organization to perform quarterly reviews as described in Section III of the IA; and

(ii)    Prepare and submit reports to the OIG-HHS, are unallowable costs for government contracting purposes and under the Medicare Program, Medicaid Program, TRICARE Program, and Federal Employees Health Benefits Program (FEHBP) (hereinafter referred to as Unallowable Costs). However, nothing in this paragraph

11

18.a.(6) that may apply to the obligations undertaken pursuant to the IA affects the status of costs that are not allowable based on any other authority applicable to Won.

b.      Future Treatment of Unallowable Costs:  Unallowable Costs shall be separately determined and accounted for by Won, and Won shall not charge such Unallowable Costs directly or indirectly to any contracts with the United States or any State Medicaid program, or seek payment for such Unallowable Costs through any cost report, cost statement, information statement, or payment request submitted by Won or any of its subsidiaries or affiliates to the Medicare, Medicaid, TRICARE, or FEHBP Programs.

c.      Treatment of Unallowable Costs Previously Submitted for Payment:  Within 90 days of the Effective Date of this Agreement, and to the extent necessary, Won agrees to identify to applicable Medicare and TRICARE fiscal intermediaries, carriers, and/or contractors, and Medicaid and FEHBP fiscal agents, any Unallowable Costs (as defined in this Paragraph) included in payments previously sought from the United States, or any State Medicaid program, including, but not limited to, payments sought in any cost reports, cost statements, information reports, or payment requests already submitted by Won or any of its subsidiaries or affiliates, and shall request, and agree, that such cost reports, cost statements, information reports, or payment requests, even if already settled, be adjusted to account for the effect of the inclusion of the unallowable costs.  Won agrees that the Government, at a minimum, shall be entitled to recoup from Won any overpayment plus applicable interest and penalties as a result of the inclusion of such Unallowable Costs on previously-submitted cost reports, information reports, cost statements, or requests for payment.

Any payments due after the adjustments have been made shall be paid to the Government pursuant to the direction of the United States Department of Justice and/or the affected agencies.

12

The Government reserves its rights to disagree with any calculations submitted by Won or any of its subsidiaries or affiliates on the effect of inclusion of Unallowable Costs (as defined in this Paragraph) on Won or any of its subsidiaries or affiliates' cost reports, cost statements, or information reports.

      d.        Nothing in this Agreement shall constitute a waiver of the rights of the Government to audit, examine, or re-examine Won's books and records to determine that no Unallowable Costs have been claimed in accordance with the provisions of this Paragraph.

      14.     This Agreement is intended to be for the benefit of the Parties only. The Parties do not release any claims against any other person or entity.

      15.     Won agrees that it waives and shall not seek payment for any of the health care billings covered by this Agreement from any health care beneficiaries or their parents, sponsors, legally responsible individuals, or third-party payors based upon the claims defined as Covered Conduct.

      16.     Won warrants that he has reviewed his financial situation and that he currently is solvent within the meaning of 11 U.S.C. §§ 547(b)(3) and 548(a)(1)(B)(ii)(I), and shall, to the fullest extent possible, remain solvent during payment to the Government of the Settlement Amount. Further, the Parties warrant that, in evaluating whether to execute this Agreement, they (a) have intended that the mutual promises, covenants, and obligations set forth constitute a contemporaneous exchange for new value given to Won, within the meaning of 11 U.S.C. § 547(c)(1), and (b) conclude that these mutual promises, covenants, and obligations due, in fact, constitute such a contemporaneous exchange. Further, the Parties warrant that the mutual promises, covenants, and obligations set forth herein are intended to and do, in fact, represent a

13

reasonably equivalent exchange of value that is not intended to hinder, delay, or defraud any entity to which Won was or became indebted to on or after the date of this transfer, within the meaning of 11 U.S.C. § 548(a)(1).

17. Relator and their heirs, successors, attorneys, agents, and assigns do not object to this Agreement and agree and confirm that this Agreement is fair, adequate, and reasonable under all the circumstances, pursuant to 31 U.S.C. § 3730(c)(2)(B). Conditioned upon Relator's receipt of the payment described in Paragraph 2, Relator and their heirs, successors, attorneys, agents, and assigns fully and finally release, waive, and forever discharge the United States, its agencies, officers, agents, employees, and servants, from any claims arising from the filing of the Civil Action or under 31 U.S.C. § 3730, and from any claims to a share of the proceeds of this Agreement and/or the Civil Action.

18. Relators, each for herself, and for their heirs, successors, attorneys, agents, and assigns, releases Won, and its officers, agents, and employees, from any liability to Relator arising from the filing of the Civil Action upon payment of all sums as provided herein without default and upon payment under 31 U.S.C. § 3730(d) for expenses and attorney's fees and costs and not until all such payments are made. Notwithstanding the foregoing, Relator Virginia Hamilton is not providing any release under 31 U.S.C. Section 3730(h) and retains all rights to pursue this claim separate and apart from this Settlement Agreement.

19. Excluding Relators or as provided in 31 U.S.C. § 3730(d)(1) or (2), each Party shall bear its own legal and other costs incurred in connection with this matter, including the preparation and performance of this Agreement.

14

20. Each party and signatory to this Agreement represents that it freely and voluntarily enters in to this Agreement without any degree of duress or compulsion.

21. This Agreement is governed by the laws of the United States. The exclusive jurisdiction and venue for any dispute relating to this Agreement is the United States District Court for the Eastern District of North Carolina. For purposes of construing this Agreement, this Agreement shall be deemed to have been drafted by all Parties to this Agreement and shall not, therefore, be construed against any Party for that reason in any subsequent dispute.

22. This Agreement constitutes the complete agreement between the Parties. This Agreement may not be amended except by written consent of the Parties.

23. The undersigned represent and warrant that they are fully authorized to execute this Agreement on behalf of the persons and entities indicated below.

24. This Agreement may be executed in counterparts, each of which constitutes an original and all of which constitute one and the same Agreement.

25. This Agreement is binding on the Parties' successors, transferees, heirs, and assigns.

26. All parties consent to the Government's disclosure of this Agreement, and information about this Agreement, to the public.

27. This Agreement is effective on the date of signature of the last signatory to the Agreement (the "Effective Date" of this Agreement). Facsimiles of signatures shall constitute acceptable, binding signatures for purposes of this Agreement.

[Settlement Agreement – *Remainder of Page Intentionally Blank*]

15

## THE UNITED STATES OF AMERICA

**Thomas Walker**
**UNITED STATES ATTORNEY**

DATED:_____ BY: _____

G. Norman Acker
Assistant United States Attorney
For the Eastern District of North Carolina
310 New Bern Avenue
Federal Building, Ste. 800
Raleigh, NC 27601

DATED:_____ BY: _____

Robert K. DeConti
Assistant Inspector General for Legal Affairs
Office of Counsel to the Inspector General
United States Department of
Health and Human Services

## THE STATE OF NORTH CAROLINA

DATED: 8/6/2015 BY: _____

Charles H. Hobgood
Special Deputy Attorney General
Director, North Carolina Medicaid Investigations
Division

16

## THE UNITED STATES OF AMERICA

**Thomas Walker**
**UNITED STATES ATTORNEY**

DATED: 8/21/15

BY: _Michael Bunn for G. Norman Acker_

**G. Norman Acker**
**Assistant United States Attorney**
**For the Eastern District of North Carolina**
**310 New Bern Avenue**
**Federal Building, Ste. 800**
**Raleigh, NC 27601**

DATED:_____

BY: _____

**Robert K. DeConti**
**Assistant Inspector General for Legal Affairs**
**Office of Counsel to the Inspector General**
**United States Department of**
**Health and Human Services**

## THE STATE OF NORTH CAROLINA

DATED:_____

BY: _____

**Charles H. Hobgood**
**Special Deputy Attorney General**
**Director, North Carolina Medicaid Investigations**
**Division**

16

## THE UNITED STATES OF AMERICA

**Thomas Walker**
**UNITED STATES ATTORNEY**

DATED:_____    BY: _____

  G. Norman Acker
  Assistant United States Attorney
  For the Eastern District of North Carolina
  310 New Bern Avenue
  Federal Building, Ste. 800
  Raleigh, NC 27601

DATED: 8/21/15    BY: _Greg Dendes for Robert DeConti_

  Robert K. DeConti
  Assistant Inspector General for Legal Affairs
  Office of Counsel to the Inspector General
  United States Department of
  Health and Human Services

## THE STATE OF NORTH CAROLINA

DATED:_____    BY: _____

  Charles H. Hobgood
  Special Deputy Attorney General
  Director, North Carolina Medicaid Investigations
  Division

16

## PRESTON ORAL AND MAXILLOFACIAL SURGERY

DATED: 8/18/15          BY: _____
JOHN S. WON, D.D.S., M.D., P.A.
(as Owner)


## JOHN S. WON, D.D.S., M.D.

DATED: 8/18/15          BY: _____
JOHN S. WON, D.D.S., M.D.
(as an Individual)


## COUNSEL FOR PRESTON ORAL AND MAXILLOFACIAL SURGERY/JOHN S. WON, D.D.S., M.D.

DATED: 8/19/15          BY: _____
CARRIE MEIGS
TEAGUE CAMPBELL DENNIS &
GORHAM, LLP
4700 FALLS OF NEUSE ROAD, STE. 450
RALEIGH, NC 27619


DATED: 8/19/15          BY: _____
KEARNS DAVIS
BROOKS, PIERCE, MCLENDON,
HUMPHREY & LEONARD
2000 RENAISSANCE PLAZA
230 NORTH ELM STREET
GREENSBORO, NC 27401

17

DATED:_____        BY: _____

**BETSY LANZEN**
**WOMBLE CARLYLE SANDRIDGE & RICE LLP**
**150 FAYETTEVILLE STREE, STE. 2100**
**RALEIGH, NC 27601**


**PLAINTIFF-RELATOR LAURA THOMAS**


DATED: 8/11/15        BY: _____

**LAURA THOMAS**


**COUNSEL FOR PLAINTIFF-RELATOR LAURA THOMAS**


DATED: 8/11/15        BY: _____

**ROBERT E. FIELDS III**
**SAMUEL PINERO II**
**OAK CITY LAW, LLP**
**702 NORTH BLOUNT STREET**
**RALEIGH, NC 27604**


17

**PLAINTIFF-RELATOR VIRGINIA HAMILTON**

DATED: 8/5/2015    BY: _Virginia Hamilton_
                        VIRGINIA HAMILTON

**COUNSEL FOR PLAINTIFF-RELATOR VIRGINIA HAMILTON**

DATED: 8/7/15    BY: _____
                     SANDRA L. W. MILLER
                     **WOMBLE CARLYLE SANDRIDGE & RICE LLP**
                     **550 S. MAIN STREET, STE. 400**
                     **P.O. BOX 10208**
                     **GREENVILLE, SC 29603-0208**

DATED: 8/7/15    BY: _____
                     BETSY LANZEN
                     **WOMBLE CARLYLE SANDRIDGE & RICE LLP**
                     **150 FAYETTEVILLE STREE, STE. 2100**
                     **RALEIGH, NC 27601**


**PLAINTIFF-RELATOR LAURA THOMAS**

DATED:_____    BY: _____
                      LAURA THOMAS

**COUNSEL FOR PLAINTIFF-RELATOR LAURA THOMAS**

DATED:_____    BY: _____
                      **ROBERT E. FIELDS III**
                      **SAMUEL PINERO II**
                      **OAK CITY LAW, LLP**
                      **702 NORTH BLOUNT STREET**
                      **RALEIGH, NC 27604**


18

**V-94-11  Dr. Won**

*Profile #360050*
*B. Creel*
*D. Haire*
*3/11/2015*

**Interest Calulations for Settlement**

| | | |
|---|---|---|
| Settlement Amount | $2,200,000 | |
| Initial Payment | $900,000 | |
| Annual interest rate | 2.75% | |
| Payment due within 1 year | $300,000 | plus accrued interest |
| Remaining payments due | | |
| every 90 days for 5 years | $50,000 | plus accrued interest |

| Terms | # | Payment | Principal | Interest Rate | Time | Balance Due | Interest |
|---|---|---|---|---|---|---|---|
| Settlement Amount | | | $2,200,000 | | | $2,200,000 | |
| Due at Settlement | 1 | $900,000 | $1,300,000 | | | $1,300,000 | |
| Due @ Settlement + 1 yr | 2 | $335,750 | $300,000 | 0.0275 | 1.00 | $1,000,000 | $35,750 |
| Due @ Settlement + 3 months | 3 | $56,875 | $50,000 | 0.0275 | 0.25 | $1,000,000 | $6,875 |
| Due @ Settlement + 6 months | 4 | $56,531 | $50,000 | 0.0275 | 0.25 | $950,000 | $6,531 |
| Due @ Settlement + 9 months | 5 | $56,188 | $50,000 | 0.0275 | 0.25 | $900,000 | $6,188 |
| Due @ Settlement + 12 months | 6 | $55,844 | $50,000 | 0.0275 | 0.25 | $850,000 | $5,844 |
| Due @ Settlement + 15 months | 7 | $55,500 | $50,000 | 0.0275 | 0.25 | $800,000 | $5,500 |
| Due @ Settlement + 18 months | 8 | $55,156 | $50,000 | 0.0275 | 0.25 | $750,000 | $5,156 |
| Due @ Settlement + 21 months | 9 | $54,813 | $50,000 | 0.0275 | 0.25 | $700,000 | $4,813 |
| Due @ Settlement + 24 months | 10 | $54,469 | $50,000 | 0.0275 | 0.25 | $650,000 | $4,469 |
| Due @ Settlement + 27 months | 11 | $54,125 | $50,000 | 0.0275 | 0.25 | $600,000 | $4,125 |
| Due @ Settlement + 30 months | 12 | $53,781 | $50,000 | 0.0275 | 0.25 | $550,000 | $3,781 |
| Due @ Settlement + 33 months | 13 | $53,438 | $50,000 | 0.0275 | 0.25 | $500,000 | $3,438 |
| Due @ Settlement + 36 months | 14 | $53,094 | $50,000 | 0.0275 | 0.25 | $450,000 | $3,094 |
| Due @ Settlement + 39 months | 15 | $52,750 | $50,000 | 0.0275 | 0.25 | $400,000 | $2,750 |
| Due @ Settlement + 42 months | 16 | $52,406 | $50,000 | 0.0275 | 0.25 | $350,000 | $2,406 |
| Due @ Settlement + 45 months | 17 | $52,063 | $50,000 | 0.0275 | 0.25 | $300,000 | $2,063 |
| Due @ Settlement + 48 months | 18 | $51,719 | $50,000 | 0.0275 | 0.25 | $250,000 | $1,719 |
| Due @ Settlement + 51 months | 19 | $51,375 | $50,000 | 0.0275 | 0.25 | $200,000 | $1,375 |
| Due @ Settlement + 54 months | 20 | $51,031 | $50,000 | 0.0275 | 0.25 | $150,000 | $1,031 |
| Due @ Settlement + 57 months | 21 | $50,688 | $50,000 | 0.0275 | 0.25 | $100,000 | $688 |
| Due @ Settlement + 60 months | 22 | $50,344 | $50,000 | 0.0275 | 0.25 | $50,000 | $344 |
| | | $1,072,188 | | | | | $107,938 |
| Totai Paid-Settlement + Interest | | $2,307,938 | | | | | $107,938 |

*Note:  Payments made prior to due dates may require interest adjustments*